IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| MICHAEL MCGEE,<br>on behalf of plaintiff and a class,<br><br>Plaintiff,<br><br>vs.<br><br>ARS NATIONAL SERVICES,<br>INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)    2:17-cv-00045<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

Plaintiff, Michael McGee, has requested that this Court enter an order determining that this action may proceed as a class action against defendant ARS National Services, Inc. Plaintiff asserts claims against defendants based on the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA").

**I.    BACKGROUND**

Defendant has been attempting to collect from plaintiff an alleged debt consisting of an alleged deficiency on a motorcycle retail installment sales contract incurred for personal, family or household purposes and not for business purposes. Plaintiff contends that the letters are wrongful because they offer to settle a debt barred by the four-year UCC statute of limitations without disclosure of that fact.

On December 7, 2016, ARS National Services, Inc. sent plaintiff the form letter attached as Exhibit A, offering a settlement of the debt.

Plaintiff had defaulted on the contract no later than 2011, as a result of becoming disabled. The motorcycle was repossessed and sold prior to February 1, 2012. No payments were made after that date.

Plaintiff alleges that defendant violated the FDCPA by attempting to settle debts which were no longer judicially enforceable without disclosure of that fact. Defendant's policy of non-

1

disclosure of time-barred debts costs consumers time and money and is a predatory violation of their rights.

## II.   THE FAIR DEBT COLLECTION PRACTICES ACT

The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. §1692(e). This law "is designed to protect consumers from unscrupulous collectors, regardless of the validity of the debt." *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 341 (7th Cir. 1997). The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements in connection with the collection of a debt. It also requires debt collectors to give debtors certain information about alleged debts, and about their rights as consumers. 15 U.S.C. §§1692d, 1692e, 1692f and 1692g.

> In enacting the FDCPA, Congress recognized the
>
> universal agreement among scholars, law enforcement officials, and even debt collectors that the number of persons who willfully refuse to pay just debts is minuscule.... [The] vast majority of consumers who obtain credit fully intend to repay their debts. When default occurs, it is nearly always due to an unforeseen event such as unemployment, overextension, serious illness, or marital difficulties or divorce.

95 S.Rep. 382, at 3 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1697.

*Ramirez v. Apex Financial Management LLC*, 567 F.Supp.2d 1035, 1042 (N.D. Ill. 2008) held that "the FDCPA's legislative intent emphasizes the need to construe the statute broadly, so that we may protect consumers against debt collectors' harassing conduct. This intent cannot be underestimated." *See also Sonmore v. CheckRite Recovery Services, Inc.*, 187 F. Supp.2d 1128, 1132 (D. Minn. 2001) (the FDCPA "is a remedial strict liability statute which was intended to be applied in a liberal manner"); *Owens v. Hellmuth & Johnson PLLC*, 550 F. Supp.2d 1060, 1063 (D. Minn. 2008) (same); and *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (the FDCPA should be "[construed]... broadly, so as to effect its purpose"). Further, "Congress intended the Act to be enforced primarily by consumers...." *Federal Trade Commission v. Shaffner*, 626 F.2d 32, 35 (7th Cir. 1980). The FDCPA encourages consumers to act as "private

2

attorneys general" to enforce the public policies expressed therein. *Crabill v. Trans Union, LLC*, 259 F.3d 662, 666 (7th Cir. 2001).

The Seventh Circuit has long held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of an "unsophisticated consumer." *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1019 (7th Cir. 2014) (citations omitted) ("[I]n deciding whether ... a representation made in a dunning letter is misleading the court asks whether a person of modest education and limited commercial savvy would be likely to be deceived."); *Turner v. J.V.D.B. & Assocs., Inc.*, 330 F.3d 991, 995 (7th Cir. 2003), held that the "test for determining whether a debt collector violated [the FDCPA] is objective, turning not on the question of what the debt collector knew but on whether the debt collector's communication would deceive or mislead an unsophisticated, but reasonable, consumer. *Gammon v. GC Servs. Ltd. Partnership*, 27 F.3d 1254, 1257 (7th Cir. 1994)."

Plaintiff need not prove intent, bad faith or negligence; "debt collectors whose conduct falls short of [the FDCPA's] requirements are liable irrespective of their intentions." *Ruth v. Triumph Partnerships*, 577 F.3d 790, 805-806 (7th Cir. 2009). And pursuant to 15 U.S.C. §1692k, statutory damages are recoverable for violations regardless of whether the consumer proves actual damages – "[all] that is required is proof that the statute was violated, although even then it is within the district court's discretion to decide whether and if so how much to award, up to the $1,000 ceiling." *Bartlett v. Heibl*, 128 F.3d 497, 499 (7th Cir. 1997). *Accord*, *Quiroz v. Revenue Production Management, Inc.*, 252 F.R.D. 438, 444 (N.D.Ill. 2008); *Blarek v. Encore Receivable Management*, 244 F.R.D. 525, 528 (E.D.Wis. 2007).

### III. STANDARD FOR CLASS CERTIFICATION

Class actions are essential to enforce laws protecting consumers. As the court stated in *Eshaghi v. Hanley Dawson Cadillac Co.*, 574 N.E.2d 760, 766 (Ill. App. Ct. 1991):

> In a large and impersonal society, class actions are often the last barricade of consumer protection.... To consumerists, the consumer class action is an inviting procedural device to cope with frauds causing small damages to large groups. The slight loss to the individual, when aggregated in the coffers of the wrongdoer,

3

>results in gains which are both handsome and tempting. The alternatives to the class action – private suits or governmental actions – have been so often found wanting in controlling consumer frauds that not even the ardent critics of class actions seriously contend that they are truly effective. The consumer class action, when brought by those who have no other avenue of legal redress, provides restitution to the injured, and deterrence of the wrongdoer.

The Seventh Circuit has noted that class actions allow for the aggregation of small claims held by many consumers. *Mace v. Van Ru Cred. Corp.,* 109 F.3d 338, 344 (7th Cir.1997), quoted with approval in *Amchem,* 521 U.S. at 617, 117 S.Ct. 2231 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.") Denial of certification would lead to a situation where consumers holding a small claim would be less likely to pursue relief given the costs involved, to the benefit of businesses which, in violating the law, obtain a significant financial benefit from their actions without fear of meaningful litigation.

Congress expressly recognized the propriety of a class action under the FDCPA, by providing special damage provisions and criteria in 15 U.S.C. §§1692k(a) and 1692k(b) class action cases. As a result, numerous FDCPA class actions have been certified – including many handled by counsel representing Plaintiff in this case, such as in *Pawelczak v. Fin. Recovery Servs., Inc.*, 286 F.R.D. 381 (N.D. Ill. 2012); *Hale v. AFNI, Inc.*, 264 F.R.D. 402 (N.D. Ill. 2009); *Randolph v. Crown Asset Management LLC*, 254 F.R.D. 513 (N.D. Ill. 2008); *Herkert v. MRC Receivables Corp.*, 254 F.R.D. 344 (N.D. Ill. 2008); *Ramirez v. Palisades Collection LLC*, 250 F.R.D. 366 (N.D. Ill. 2008); *Wahl v. Midland Credit Management, Inc.*, 243 F.R.D. 291 (N.D. Ill. 2007); *Hernandez v. Midland Credit Management, Inc.*, 236 F.R.D. 406 (N.D. Ill. 2006); *Lucas v. GC Services LP*, 226 F.R.D. 337 (N.D. Ind. 2005); *Carbajal v. Capital One FSB*, 219 F.R.D. 437 (N.D. Ill. 2004); *Morris v. Risk Management Alternatives, Inc.*, 203 F.R.D. 336 (N.D. Ill. 2001); *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols & Clark LLC*, 198 F.R.D. 503 (N.D. Ill. 2001); *Macarz v. Transworld Systems, Inc.*, 193 F.R.D. 46 (D.Conn. 2000); *Vines*

*v. Sands*, 188 F.R.D. 302 (N.D. Ill. 1999); and *Clark v. Retrieval Masters Creditors Bureau, Inc.*, 185 F.R.D. 247 (N.D. Ill. 1999).

**IV.   THE PROPOSED CLASS SATISFIES FED. R. CIV. P. 23**

   **A.   Rule 23(a)(1) – Numerosity**

Fed. R. Civ. P. 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Plaintiff need not specify the exact number of class members; reasonable estimates and common-sense assumptions are sufficient. *Flood v. Dominguez*, 270 F.R.D. 413, 417 (N.D. Ind. 2010) ("A court must rely on simple common sense when determining whether a class size meets the numerosity requirement."); *Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508, 525 (E.D. Wis. 2014) (quoting *Arnold Chapman and Paldo Sign & Display Co. v. Wagener Equities, Inc.*, 747 F.3d 489, 492 (7th Cir.2014 (A "class can be certified without determination of its size, so long as it's reasonable to believe it large enough to make joinder impracticable.")

A class as small as forty may satisfy the numerosity requirement. *Flood*, 270 F.R.D. at 417. It is reasonable to assume that there are at least 40 people in the class. Here, the class turn on a form letter, designed to be mass produced and mailed in bulk. *Lucas v. GC Servs. L.P.*, 226 F.R.D. 337, 340 (N.D. Ind. 2005) (citations omitted) ("Courts have found that it is reasonable to assume the number of potential class members satisfies the numerosity requirement when the defendant allegedly used "preprinted, standardized debt collection letters in attempting to collect on the [allegedly delinquent] debt.") Plaintiff will obtain the exact number of class members through discovery and requests a briefing schedule long enough to obtain such information.

   **B.   Rules 23(a)(2) and 23(b)(3) – Commonality and Predominance**

Fed. R. Civ. P. 23(a)(2) requires that class members share a common question of law or fact. Commonality is satisfied when a common issue of law or fact is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*,

5

564 U.S. 338, 350 (2011). Common questions often arise where defendants have engaged in standardized conduct towards members of the proposed class. *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998); *Suchanek v. Sturm Foods,* 764 F.3d 750, 756 (7th Cir. 2014 ("Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question.") *Dekeyser v. Thyssenkrupp Waupaca, Inc.*, 314 F.R.D. 449, 452 (E.D. Wis. 2016) ("Even a single such common question is enough to satisfy Rule 23(a)(2), and the existence of a mixture of common and individual questions presents an issue of whether common questions "predominate" over individual questions under Rule 23(b)(3), not an issue of commonality under Rule 23(a)(2).")

Predominance is satisfied when "common questions represent a significant aspect of [a] case and ... can be resolved for all members of [a] class in a single adjudication." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012) (citation omitted):

> If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question. If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question." Individual questions need not be absent. The text of Rule 23(b)(3) itself contemplates that such individual questions will be present. The rule requires only that those questions not predominate over the common questions affecting the class as a whole.

*Id.* (citations omitted). *See also Doster Lighting, Inc.*, 2015 WL 3776491, at *8 (Common issues predominate "if they have a direct impact on every class member's effort to establish liability, and if that impact is more substantial than the impact of individualized issues in resolving the claims.")

That class members may have different damages does not undermine commonality or predominance:

> It would drive a stake through the heart of the class action device, in cases in which damages were sought rather than an injunction or a declaratory judgment, to require that every member of the class have identical damages. If the issues of liability are genuinely common issues, and the damages of individual class members can be readily determined in individual hearings, in settlement negotiations, or by creation of subclasses, the fact that damages are not identical across all class members should not preclude class certification. Otherwise defendants would be able to escape liability for tortious harms of enormous

6

>aggregate magnitude but so widely distributed as not to be remediable in individual suits.

*Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. (2013) (quoted in *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076, 1083 (7th Cir. 2013).

In this case, the predominant question that all class members share is whether the letter at issue violates § 1692e and §1692g(a)(2) of the FDCPA. The only individual issue is the identification of the members of each class, which is largely capable of ministerial determination from Defendant's records. Questions readily answerable from a defendant's files do not present an obstacle to class certification.

In *Fosnight v. LVNV Funding, LLC*, 310 F.R.D. 389 (S.D. Ind. 2015), an FDCPA case, the Court found both commonality and predominancehad been satisfied, explaining:

>There is no subjective standard at issue that would require each individual putative plaintiff to testify; rather, the standard is the unsophisticated consumer. Under such circumstances, there is no cause to doubt that Plaintiff's claims are common with those of putative class members—the proof required is virtually identical as to each putative plaintiff. Further, Plaintiff has provided enough evidence from which the Court can concluded that the type of debt at issue as to the entire class is a consumer one.
>. . . .
>The Court is persuaded that common issues predominate over individualized ones. In the context of Plaintiff's FDCPA claim, the key issue in the case—whether or not the letter violates the FDCPA—is identical as to each putative plaintiff. The only individualized issues that Defendants raise, namely receipt of the letter and the nature of the debt, are easily addressed in the class context by Defendant itself as this information should be readily available to it in the records of each putative plaintiff.

*Id.* at 393, 394.

Here, as in *Fosnight,* common issues predominate over individual ones.

### C.   Rule 23(a)(3) – Typicality

Fed. R. Civ. P. 23(a)(3) requires that the claims of a named plaintiff be typical of the claims of the class. *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998), held that "[a] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." (Citation and internal quotation marks omitted.) In the instant case, typicality is inherent in the

7

class definitions. By definition, the members of the class were subjected to the same practices as Plaintiff, and thus suffered the same violation of the FDCPA that Plaintiff suffered.

       **D.**      **Rule 23(a)(4) – Adequacy of representation**

Fed. R. Civ. P. 23(a)(4) requires that a named plaintiff provide fair and adequate protection for the interests of the class. That protection involves two factors: (a) a plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) a plaintiff must not have interests antagonistic to those of the class. *Eubank v. Pella Corp.*, 753 F.3d 718, 722 (7th Cir. 2014); *Phillips*, 736 F.3d at 1080-1081; *Crissen v. Gupta*, No. 2:12 CV 00355 JMS, 2014 WL 4129586, at *7 (S.D. Ind. Aug. 19, 2014) (counsel's divided loyalties rendered him inadequate to serve as class counsel).

Both of these considerations are satisfied here. Plaintiff understands the obligations of a class representative, and has retained experienced counsel – as is indicated by <u>Exhibit B</u> which sets forth counsel's qualifications. Further, Plaintiff and class members seek money damages as the result of Defendant's unlawful collection practices, provided for by 15 U.S.C. §1692k. Given the identity of claims between Plaintiff and members of the class, there is no potential for conflicting interests in this action. There is no antagonism between the interests of Mr. McGee and those of the class members.

       **E.**      **Rule 23(b)(3) – Superiority**

Class actions are especially appropriate for resolving FDCPA claims. See *Crawford v. Equifax Payment Servs., Inc.*, 201 F.3d 877, 880 (7th Cir. 2000) ("Because these are small-stakes cases, a class suit is the best, and perhaps the only, way to proceed."). Where, as here, Defendant has engaged in standardized conduct by attempting to collect debts through a misleading form letter, each class member's claim is likely to be too small to vindicate through an individual suit. A class action, on the other hand, is an efficient, effective way to obtain relief to individual class members, especially when it is highly unlikely that an individual class member would be aware that Defendant was violating the law and unlikely to be able to find an attorney to take the case,

as an individual case would be economically unfeasible. *Suchanek v. Sturm Foods,* 764 F.3d 750, 759 (7th Cir. 2014) ("[C]lass actions are designed to "cover cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results), quoting *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 615, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (internal quotation and alteration omitted). *See also Mace v. Van Ru Cred. Corp.,* 109 F.3d 338, 344 (7th Cir.1997), quoted with approval in *Amchem,* 521 U.S. at 617, 117 S.Ct. 2231 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.")

Here, a class action is a superior method of fairly and efficiently prosecuting this litigation. Congress intended that class actions constitute the principal enforcement mechanism under the FDCPA. Class-wide liability is essential to cause Defendant to stop its improper conduct. Moreover, many class members may be unaware that they have been victims of illegal conduct. *Lucas v. GC Servs. L.P.,* 226 F.R.D. 337, 342 (N.D. Ind. 2005) ("Denial of the motion for class certification would potentially result in courts becoming consumed with many individual cases that seek to litigate an essential core of the same legal and factual issues" and "a class action is superior to individual action in this case because litigation costs are high and the likely recovery is limited. Thus, recipients of the letter are unlikely to prosecute individual claims without the availability of cost-sharing efficiencies of a class action.")

## V.   CONCLUSION

The proposed class meets the requirements of Rules 23(a) and (b)(3). Plaintiff respectfully requests that this Court certify this action as a class action.

Respectfully submitted,


s/Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Francis R. Greene
EDELMAN, COMBS, LATTURNER
        & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

10

## **CERTIFICATE OF SERVICE**

  I, Daniel A. Edelman, hereby certify that on February 2, 2017, I caused to be filed the foregoing documents via the CM/ECF System, and shall cause to be served, as soon as service may be effectuated, a true and accurate copy of such filing via process server upon the following party:

ARS National Services, Inc.
c/o Corporation Service Company
251 East Ohio Street, Suite 500
Indianapolis, IN 46204

              s/Daniel A. Edelman
              Daniel A. Edelman